### AMERICAN PRESERVERS' CO. *v.* NORRIS *et al.*

*(Circuit Court, E. D. Missouri, E. D.  September 1, 1890.)*

1. CORPORATIONS—CONTRACTS.
   A manufacturing corporation sold its business to its principal stockholders, who thereupon sold it to a third person, with an agreement not to enter into the same business, directly or indirectly. This agreement was not signed by the corporation. *Held*, that the corporation was not bound by the agreement.

2. INJUNCTION—WHEN ISSUED.
   An agreement not to enter into a certain business will not be enforced by preliminary injunction, at suit of the assignee of the covenantee, where the defendants are abundantly solvent, and there is doubt whether the agreement, being general, is valid, whether it is supported by an adequate consideration, and whether it is assignable.

In Equity. On motion for injunction.

*Chester H. Krum*, *Frank K. Ryan*, *A. Leo Weil*, and *M. F. Elliott*, for complainant.

*Judson & Reyburn*, for defendants.

THAYER, J. The material facts on which the decision of the present motion depends are substantially as follows:

The Taylor Manufacturing Company is a corporation duly organized under the laws of Missouri, and for several years has been engaged in

manufacturing and selling flavoring extracts, baking-powders, shelf-goods, and grocers' sundries, and until about the 15th of June, 1888, was also engaged in manufacturing preserves, jellies, fruit-butters, etc. The other defendants, that is to say, L. E. Taylor, James N. and E. R. Norris, are its principal stockholders, and for some years have been officers and directors of the company, and have had full control of its business and have directed its policy. On the 22d of March, 1888, all of the defendants, including the Taylor Manufacturing Company, signed an agreement, the purpose of which was to form an association styled the "American Preservers' Trust," composed of a large number of firms and corporations then engaged in the fruit-preserving business in various parts of the country. The object of forming such a trust, as stated in the bill, was "to consolidate the property and business, and to identify the interests of the respective members of the association, to the end that they might secure an economical, profitable, and satisfactory conduct of the fruit-preserving business." After the trust had been duly organized and put in operation, the Taylor Manufacturing Company conveyed to defendants Taylor and E. R. and James N. Norris all of its machinery and tools for the manufacture of preserves, jellies, fruit-butters, etc., as well as all of its trade-marks and brands in use in that department of its business, at an agreed valuation of $17,850, which sum was charged against the purchasers on the books of the company, and thenceforth the company ceased to manufacture preserves, jellies, fruit-butters, etc. Thereafter, on June 15, 1888, Taylor and E. R. and James N. Norris transferred the same property to the St. Louis Preserving Company, a Missouri corporation, then recently organized, whose stock was all owned by the trustees of the American Preservers' Trust. For the conveyance thus made to the St. Louis Preserving Company, Taylor and the Norrises received 1,145 trust certificates of the American Preservers' Trust, each of the par value of $100. The trustees of the trust agreed at the time to find a purchaser for these certificates at the price of $17,850, whenever Taylor and the Norrises desired to sell the same; and the last-named parties entered into a covenant with the St. Louis Preserving Company, that, so long as the trust existed, they would not, either directly or indirectly, engage in the manufacture of preserves, jellies, fruit-butters, etc., within 20 miles of the city of St. Louis, and that they would not buy or deal in such articles, unless they had been prepared by persons or corporations concerned in the trust. A year afterwards, that is, on or about May 15, 1889, the Messrs. Taylor and Norris elected to sell the 1,145 trust certificates by them acquired, as aforesaid; but, before the trustees of the trust would fulfill their obligation to find a purchaser for the same, they required the Messrs. Taylor and Norris to sign what is termed an "agreement of co-operation." By the terms of the last-mentioned agreement, the defendants L. E. Taylor, E. R. and James N. Norris agreed with the trustees of the trust, among other things—

"That for * * * the period of twenty-five years, the contemplated duration of the trust, or until its earlier termination in the manner provided for

by the terms of the agreement of association, they [Taylor and the Norrises] would not, within the territory of the United States of America, engage, be employed, or become interested, either personally or by representative, pecuniarily or in any manner, except through the medium of the American Preservers' Trust, in the manufacture or sale of preserves, jellies, fruit-butters, and mince-meat, or in any way obstruct the work of said trust, or in any manner assume a position adverse thereto, but at all times, and in every way, * * * would give it cordial * * * support," etc.

The Taylor Manufacturing Company did not sign the first covenant entered into by its stockholders with the St. Louis Preserving Company on or about June 15, 1888, nor the subsequent "agreement of co-operation," as it is termed, for the reason that it was advised by counsel that it could not lawfully become concerned in a trust, either directly or indirectly. The trustees of the American Preservers' Trust have recently assigned all their rights under the agreement of co-operation, to the present plaintiff, the American Preservers' Company, a West Virginia corporation. Although the fact is not averred in the bill, yet from affidavits on file it appears that the present complainant has recently acquired all the properties and manufacturing plants heretofore controlled by the trustees of the trust, and is, in one sense, at least, the successor of the trust. All of its stock appears to be vested at present in those persons who have heretofore acted as trustees of the trust. Within the past three months, the Taylor Manufacturing Company has erected a new plant for the manufacture of preserves, jellies, fruit-butters, etc., and has actually begun to manufacture such articles, but does not make use of any of the trade-marks, brands, etc., formerly in use in that department of its business. The purpose of this suit is to restrain such manufacture, the theory on which the suit is prosecuted being, that the prosecution of such business by the Taylor Manufacturing Company, is in violation of the agreement of co-operation above mentioned; that such agreement was and is binding on the Taylor Manufacturing Company, although not signed by it; that the rights acquired by the trustees of the American Preservers' Trust under and by virtue of that agreement, as against the Taylor Manufacturing Company and its principal stockholders, were and are assignable, and may be enforced by an assignee of the agreement; and that, as such assignee, the present complainant is entitled to an injunction restraining the defendants from engaging in the manufacture of preserves.

The complainant professes itself willing to supply the defendants with all the preserves, jellies, etc., that they, or either of them, may need in the transaction of their business. As the case is now before the court merely on a motion for a preliminary injunction, the questions now considered and decided will, of course, be open for further discussion, if counsel so desire, either on final hearing, or on the hearing of a general demurrer to the bill.

It is obvious that an injunction, to be effectual to preserve the complainant's alleged rights pending the suit, must run against the Taylor Manufacturing Company, as well as against the other defendants; and,

as at present advised, the court is of the opinion that complainant is not entitled to an injunction against the manufacturing company, because it did not sign the "agreement of co-operation," as it is termed, and is not bound by any of its provisions.    It is true that the bill avers that the Messrs. Taylor and Norris, in executing that agreement, "were acting as well for the Taylor Manufacturing Company as for themselves, * * * and were duly authorized * * * by said company to act in its behalf;" but by none of the recitals or provisions of that agreement, which is set out in full in the bill, does it appear that the Taylor Manufacturing Company was a party to the agreement, or that Messrs. Taylor and Norris undertook thereby to bind the corporation; nor is there any evidence that the corporation ever authorized them to make such an agreement in its behalf, if they had so attempted.    The agreement in question professes on its face to be the individual contract of L. E. Taylor, E. R. and James N. Norris, with the trustees of the American Preservers' Trust; and it cannot be construed as the contract of the Taylor Manufacturing Company without the aid of extrinsic proof, which has not been furnished, even if such proof is admissible.    Evidently, therefore, the contention that the Taylor Manufacturing Company is bound by the agreement must rest wholly on the ground that Messrs. Taylor and Norris are its largest stockholders; that the business of the company inures mainly to their benefit; and that, by virtue of their relation to the corporation as principal stockholders and officers, they have power to control its action, and are bound to so control it as to harmonize with their own individual contracts.    But such relation on their part to the company is clearly not sufficient to cast on the corporation the burden of discharging any obligations that such stockholders in their individual capacity may have assumed.    As officers and directors of the corporation, it is their duty to serve the interests of the corporation, considered as a distinct legal entity.    It is familiar law that a corporation has a personality of its own, distinct from that of its stockholders; that it is not affected in the most remote degree by contracts made by its stockholders with third parties, whether they own much or little of its capital stock, and is not bound to discharge any personal obligations assumed by its stockholders.    *Pullman's Palace Car Co.* v. *Missouri Pac. Ry. Co.,* 115 U. S. 587, 6 Sup. Ct. Rep. 194; *Moore & Handley Hardware Co.* v. *Towers Hardware Co.,* 87 Ala. 206, 6 South. Rep. 41, and 13 Amer. St. Rep. 23, and citations; *Davis, etc., Wheel Co.* v. *Davis, etc., Wagon Co.,* 20 Fed. Rep. 700.

In the case of *Beal* v. *Chase,* 31 Mich. 490, which bears a stronger resemblance to the case at bar than any other cited by complainant's counsel, a corporation was enjoined from engaging in a certain publishing business, at a given place, which one of its largest stockholders, previous to the formation of the corporation, had covenanted not to engage in.    But in that case it appeared that all the stockholders of the corporation before its formation were aware of the covenant incapacitating the principal stockholder from engaging in the business in question, and that one purpose had in view in organizing the corporation was to enable him

to evade his covenant. The decision in question evidently rests on the ground that the persons who organized the company, and owned all of its stock up to the time the suit was filed, had entered into a conspiracy to aid one of their number, who was the largest shareholder, in avoiding a valid covenant, and that, under the circumstances, he should not be allowed to shelter himself behind the corporate entity. The decision referred to cannot be regarded as impugning, much less as overturning, the general doctrine that an incorporated company is not liable on the covenants of its stockholders, made in an individual capacity, and not as agents of the company. In the case at bar it is not pretended that the defendants have acted fraudulently. The Taylor Manufacturing Company was a going concern, doing an extensive business, when the agreement made by certain of its shareholders not to engage in the business of manufacturing preserves, jellies, fruit-butters, etc., was made. The company was not organized after the covenant was entered into, as in the case of *Beal* v. *Chase*, merely to enable certain persons to do indirectly what they might not do directly. It declines to be bound by what is termed the "agreement of co-operation," because it never executed the same, and because, as the affidavits tend to show, it was not supposed, at the time the agreement was made by the Messrs. Taylor and Norris, that the company, in its corporate capacity, had any power to enter into such an engagement.

I conclude, therefore, from the consideration given to this question alone, that the corporation defendant has the right to resume the manufacture of preserves, jellies, etc., because it never agreed to abandon the manufacture of the same, and that an injunction restraining it from so doing would be an improper order.

There are several other important questions also raised by the present motion, notably the question whether a covenant, such as is contained in the agreement of co-operation, not to engage in a given business anywhere in the United States, is a valid covenant; also the question whether, under the circumstances disclosed by the affidavits, that agreement was supported by a consideration that would render it enforceable in equity, even assuming it to be in other respects valid; also the question whether the covenant sought to be enforced is assignable, and, under the circumstances disclosed by the affidavits, may be enforced by the present complainant; and, finally, the question arises whether the trust agreement itself, in pursuance of which the other agreements appear to have been executed, was not in violation of public policy, and for that reason void.

With reference to all of these questions, and without undertaking to decide either, it is sufficient to say that they are questions of so much importance, and are involved in so much doubt, that it would be manifestly improper to grant an injunction in a case where such questions are involved, and where, as in this case, the defendants are abundantly solvent, prior to a final hearing.

The motion for an interlocutory injunction is accordingly overruled.