## MORRISON LUMBER·CO. *v.* LOOKOUT MOUNTAIN HOTEL CO.

### (*Knoxville.*　　October 15, 1893.)

1. NEGOTIABLE INSTRUMENTS. *Indorsers' liability inter sese.*

   The payee of a negotiable note, whose name stands as first indorser thereon, cannot recover of parties whose names stand as subsequent indorsers thereon, the amount paid by him in satisfaction of the note, without averment and proof of facts showing that the subsequent indorsers are, as to him, in fact joint makers or guarantors of the note. Both averment and proof are wanting in this case.

2. SAME. *Same.  Parol evidence.*

   *Prima facie* a second indorser is not liable to a payee who appears on the paper as first indorser, but, as between the parties themselves, the Courts will inquire into and declare the true order of liability; and upon this question parol evidence is admissible.

   Cases cited and approved: Rivers *v.* Thomas, 1 Lea, 649; Harding *v.* Waters, 6 Lea, 331.

   Cited as overruled: Comparree *v.* Brockway, 11 Hum., 355; Clouston *v.* Barbiere, 4 Sneed, 335; Brinkley *v.* Boyd, 9 Heis., 150; 95 U. S. 90; 22 How., 341.

---

FROM HAMILTON.

---

Appeal from Chancery Court of Hamilton County. T. M. McCONNELL, Ch.

COOKE, FRAZIER & SWANEY for Lumber Company.

WATKINS & BOGLE for Hotel Company.

LURTON, J.  The Lookout Mountain Hotel Company executed to the Morrison Lumber Company a note, in words and figures as follows:

"$524.25.     CHATTANOOGA, TENN., Nov. 12, 1890.

"Ninety days after date we jointly and severally promise to pay to the order of Morrison Lumber Company, of Chattanooga, five hundred and twenty-four $\frac{25}{100}$ dollars, at First National Bank, Chattanooga, Tenn.  Value received.

"If suit is brought upon this note, we agree to pay five per cent. attorney's fees, and costs of collection.

"(Signed)     LOOKOUT MOUNTAIN HOTEL CO.,

"By H. WHITESIDE, *Pres't.*

(Indorsed on back:)

"MORRISON LUMBER CO., R. MORRISON, *Pres't.*

"E. WATKINS.

"H. WHITESIDE."

Upon the face of this note, the defendants, Watkins and Whiteside, are but second indorsers, and the complainant is the payee and first indorser.  *Prima facie*, a second indorser is not liable to a payee, who appears on the paper as first indorser.  To enable such a payee to recover against defendants—appearing to be only subsequent indorsers—there should be some averment of facts sufficient in law to constitute them either joint makers or guarantors.  Randolph, Com. Paper, Sec. 844.

The bill is defective in this particular. It does not allege that appellees were joint makers or guarantors; nor does it state any fact from which this relation could be presumed. The only allegation is that defendants—which includes the maker—are indebted by note, and that demand, protest, and notice had been regularly made. The answer is equally vague. It asseverates, with vigor, that the *note* shows that Whiteside and Watkins are second indorsers, and that the complainant is payee and first indorser. This was a state of facts apparent on inspection. Whether they became indorsers at the request of the maker, and before delivery to the payee, or at the request of the payee, after delivery, cannot be discovered from the pleadings.

From the evidence of Mr. Morrison, the only witness who speaks at all as to the circumstances under which these indorsements were made, it appears that the note sued on is a second renewal note. The first note was signed by the Lookout Hotel Company alone, and was given in settlement of an account for lumber. This original note was indorsed by the payee, and discounted in the First National Bank of Chattanooga. When it fell due it was not paid, but renewed by substituting another note, executed by same maker, and indorsed by the present defendants, Watkins and Whiteside. This renewal note was not paid; the personal note being executed and placed with the discounting bank in lieu of the past-due note.

Under the earlier cases in this State, there was no liability by such indorsers to the payee, who must necessarily become the first indorser. These cases were practically overruled by *Rivers* v. *Thomas*, 1 Lea, 649; and in the latest utterance of this Court the cases of *Comparree* v. *Brockway*, 11 Hum., 355; *Clouston* v. *Barbiere*, 4 Sneed, 335; and *Brinkley* v. *Boyd*, 9 Heis., 150, were expressly overruled. *Harding* v. *Waters*, 6 Lea, 331.

The rule in this State, as now settled, in regard to irregular indorsements is that, as between the parties to such paper, parol evidence may be received to show the circumstances under which such indorsement was made; and from all the facts and circumstances surrounding the indorsement, the Court will give to such contract that interpretation and effect which will carry out the just intent and understanding of the parties. In the absence of any evidence as to the circumstances, the contract must rest upon the presumption arising as matter of law from the attitude of the names upon the paper. *Harding* v. *Waters*, *supra;* *Good* v. *Martin*, 95 U. S., 90; *Rey* v. *Simpson*, 22 How., 341.

The facts and circumstances shown in evidence in this case are aggravatingly meager. The only witness who undertakes to speak upon this question at all omits. much that would have thrown light upon the intent and understanding as to these indorsements. This much is clear: The payee in the original note had indorsed it to the dis-

counting bank. The maker had permitted it to go to protest. The payee was liable to the bank on its indorsement. Under these circumstances a new note is made by the debtor. The indorsement of defendants, Whiteside and Watkins, was procured, and the note discounted in bank to take up the original past-due note. This second note matured, and, like .the first, is protested for non-payment. A third note is made by the debtor company. The indorsement of Whiteside and Watkins again procured. This note is discounted in bank, after being indorsed by the payee, and with its proceeds the former renewal note taken up.

Now, were these indorsements upon either of these renewal notes made on request of the maker? If so, upon what consideration? If made before delivery to the payee, and upon request of the maker, the presumption would be that the purpose was to give credit to the maker, and thus enable him to obtain an extension of time.

The extension of time would be a good consideration, and take the case without the statute of frauds. *Rivers* v. *Thomas, supra.* Under such circumstances the intent of the indorsers to aid the credit of the maker, upon a good consideration, would make them liable as guarantors to the payee or any other to whom the note might come. To give effect to the clear intent of such indorsers, the law would give to the contract such interpretation as would give effect and validity to an otherwise ineffectual engagement.

The facts in this record are not such as imply an intent to give credit to the maker, or to become liable to the payee. When Mr. Morrison, the president of the payee company, was asked as to whether this note was indorsed by Whiteside and Watkins before delivery to his company, he answered that "the note was indorsed by Whiteside and Watkins before it was indorsed by the Morrison Lumber Company." Speaking further of the first renewal note, but calling it improperly the original note, the same witness said: "The original note was indorsed by Whiteside and Watkins, and when it became due was not paid, and this note [referring to the one in suit] is a renewal note. *I took it to Whiteside and Watkins*, and they indorsed it, and I afterwards indorsed it for the Morrison Lumber Company, at the time I took it to the bank."

Now, if the hotel company, after maturity of its unindorsed original note, gave a new note to its creditor, and the creditor, for the purpose of enabling it to discount such note and pay off the past-due note upon which it was liable as indorser to the discounting bank, procured the indorsements of Whiteside and Watkins after it had accepted such an unindorsed note from its debtor, and such indorsement was not in pursuance of any agreement between the maker and the indorsers for the benefit of the maker, then it is clear that such indorsers would not be liable to the payee for whose benefit they indorsed, either as joint makers or guarantors.

Morrison Lumber Co. *v.* Lookout Mountain Hotel Co.

The circumstances of this case tend to indicate that these indorsements were procured by the payee after the delivery of the renewal note to it. They tend to show that the indorsement was made to enable the payee to discount the note and take up the past-due renewal note, on which it was liable as indorser. We do not overlook the fact that H. Whiteside, one of these indorsers, is probably the same H. Whiteside who, as president of the hotel company, had executed this note for the hotel company. Yet it is not improbable that *after* he had made and delivered this renewal note to the complainant company, that he was solicited by the payee to indorse it individually to enable the payee to discount it; for, as before stated, the president of the creditor corporation states that " he *took* the renewal note to Whiteside and Watkins, and they indorsed it." That they did so at his request and for his benefit is most probable, from all the circumstances stated.

When a note is indorsed by a third person, after its delivery to the payee, and at the request of the payee, and for the purpose of enabling him to discount it, such an indorser cannot be held liable to the payee, either as a joint maker or guarantor, but is only liable to the assignee of such note as an indorser after protest and notice.

The decree dismissing the bill as to the defendants, Watkins and Whiteside, must be affirmed.