## WOODRUFF v. SHIMER.

(Circuit Court of Appeals, Third Circuit. August 20, 1909.)

No. 41.

1. CORPORATIONS (§ 316*)—ACTS OF PRESIDENT—ASSIGNMENT OF CONTRACT—AUTHORITY.

Where the president and principal owner of the stock of a corporation, individually, had a contract with W. for the purchase of limestone and ore to be smelted at the corporation's furnace, and without any authority from the corporation's board of directors attempted to assign such contract to the corporation by executing a purported assignment, signed by him as an individual and as president of the corporation, such assignment was insufficient to transfer the obligation to the corporation, which had authority to act only by its corporate officers, under proper corporate authority from the board of directors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1402, 1403; Dec. Dig. § 316.*]

2. CORPORATIONS (§ 573*)—ORGANIZATION—CHANGE OF FORM—CORPORATION SOLE.

A corporation, which under the laws of the state of its organization was required to have shares of stock, stockholders, directors, and officers, could not have its entire form and corporate existence changed to a corporation sole by the mere will of the majority stockholders.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2293–2296; Dec. Dig. § 573.*]

3. CORPORATIONS (§ 406*)—SUPPLIES—CORPORATE LIABILITY.

Where W. furnished limestone and iron ore used by a corporation under a contract between W. and B. as an individual, the fact that B. was also president and principal owner of the corporation, that the material was tagged and billed to it, charged to it on W.'s books, and statements of weights and analyses were sent by it to W., did not make it liable to him therefor.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1612; Dec. Dig. § 406.*]

Appeal from District Court of the United States for the Eastern District of Pennsylvania.

In the matter of the Roanoke Furnace Company, bankrupt. From an order reversing a referee's finding allowing the claim of Thomas L. Woodruff, he appeals. Affirmed.

For opinion below, see 166 Fed. 944.

Charles F. Eggleston and Turner K. Hackman, for appellant.

Samuel W. Cooper, for appellee.

Before GRAY and BUFFINGTON, Circuit Judges, and YOUNG, District Judge.

YOUNG, District Judge. This is an appeal from the decision of the District Court reversing the finding of the referee in allowing the claim of Thomas L. Woodruff, the appellant, as a creditor of the Roanoke Furnace Company, the bankrupt. It appears from the referee's report that one Baird was the owner of two iron furnaces at Roanoke, Va. These furnaces were operated by him under the firm name of Roanoke Furnace Company. In December, 1899, Baird secured a charter of incorporation for the Roanoke Furnace Company, at Roanoke, and entered into an agreement with the corporation whereby

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

he sold to it all of his right, title, and interest in the furnace plant formerly operated by the Roanoke Iron Company at Roanoke, Va., in consideration of the transfer to him and his nominees of all of the 5,000 shares constituting the capital stock of the said corporation. Of these shares, according to the agreement, Baird received 4,969; the balance of 31 shares being distributed among four other persons. Baird and his four associates were elected directors, and he became its president.

Woodruff, the claimant, and Baird, on August 30, 1900, entered into an agreement by which Woodruff was to mine the ore at mines of which Baird was the owner or lessee and quarry the limestone at the Buchanan quarry for Baird, and to sell and deliver the iron ore from the Rye Valley mines, of which Woodruff was the lessee, to Baird. All of the ore and limestone mined or quarried by Woodruff was to be delivered on cars either on the Norfolk & Western Railroad or the Marion & Rye Valley Railroad. The agreement further provided that Woodruff was to be paid by Baird for all iron ore and limestone mined and quarried at certain rates. Acting under this agreement, Woodruff took complete charge of the mines, mined the ore, and quarried the limestone, and shipped the same to the Roanoke Furnace Company, at Roanoke. Va., pursuant to Baird's orders.

Upon October 13, 1900, the following assignment of the agreement of August 30, 1900, was made by Baird to the Roanoke Company:

"This agreement, made the 13th day of October, 1900, between Chester R. Baird, trading as C. R. Baird & Co., of the first part, and Roanoke Furnace Co., a corporation duly incorporated under the laws of the state of New Jersey and authorized to do business in the state of West Virginia, of the second part.

"Whereas, the said Chester R. Baird, in the execution of the contract hereinafter referred to, acted for the use and benefit of the said Roanoke Furnace Company:

"Now this agreement witnesseth that the said Chester R. Baird, in consideration of the premises, and of the covenants and agreements of the said Roanoke Furnace Company hereinafter contained, assigns, sets over, and transfers unto the said Roanoke Furnace Co. all his right, title, and interest in and to the agreement made and entered into on the 30th day of August, 1900, by and between Thomas L. Woodruff, of Roanoke, Virginia, and the said Chester R. Baird, trading as C. R. Baird & Co.

"And this agreement further witnesseth that the said Roanoke Furnace Company, in consideration of the said assignment, covenants and agrees to and with the said Chester R. Baird, to hold him harmless on all of the covenants and agreements made by him in the said contract with Thomas L. Woodruff.

"In witness whereof, the said Chester R. Baird has hereunto set his hand and seal and the said Roanoke Furnace Company has hereunto caused its corporate seal to be affixed.                                   Chester R. Baird.
                                          "Roanoke Furnace Co.,
                                          "By Chester R. Baird, Prest."

It thus appears that Baird by this paper sought to bind the Roanoke Furnace Company for all the provisions of the contract of August 30, 1900. The corporate seal was not affixed, and there was no corporate action authorizing, or approving, or ratifying the transaction. The whole case turns upon the question whether or not the assignment above referred to bound the Roanoke Furnace Company and made it

liable for the contract price of the ore and limestone mined and delivered by Woodruff to the Roanoke Furnace Company.

The contract which is the basis of the claim was between Woodruff and Baird. There never was an assignment of that contract to the Roanoke Company, accepted or ratified by it. That company, being a corporation, in either the acceptance or ratification of the contract, could only act by its corporate officers under or by authority granted to them so to act. Humphreys v. McKissock, 140 U. S. 312, 11 Sup. Ct. 779, 35 L. Ed. 473. There is no pretense that the assignment of the 13th of October, 1900, was signed by the Roanoke Furnace Company, or that Baird, in signing the Roanoke name by Charles R. Baird, had any authority from the corporation to so sign the name. This agreement must be regarded as an attempted assignment of Baird's interest to the Roanoke Furnace Company, unaccepted by that company, and by which Baird, evidently intended to save himself personally harmless from the consequences for which he might be liable under the agreement of August 30, 1900, between himself and Woodruff. Can it be seriously argued that Baird could shift from his own shoulders all the burdens and liabilities of the contract of August 30, 1900, by making an assignment of his interest in it, and then, without authority, signing the name of the Roanoke Furnace Company thereto by himself as president, without any authority to sign, and so incur the obligation for the company?

The vice of the referee's conclusion and the vice of appellant's argument, as is so plainly presented and pointed out by the court below, is the assumption that, because Baird owned the majority of the stock of the company, he could do as he pleased with the affairs of the corporation—that a corporation, which under the laws of the state of its incorporation was required to have shares of stock, stockholders, directors, and officers, could have its entire form and corporate existence changed to a corporation sole by the will of the majority stockholder. It is not a corporation sole. It makes for nothing to call it a corporation sole in fact. It has the character which the law of its being, the corporation law of its origin, fixes upon it. It must act according to those laws laid down for its government. It cannot act as a corporation sole. It cannot get rid of its identity. It is an entity separate and apart from Baird individually, separate and apart from him as president. The paper of October 13, 1900, has no binding force upon the corporation. It is simply a declaration of Baird that he was acting for the use and benefit of the Roanoke Company. Nothing that Baird did before or after that assignment would bind the corporation, either in accepting or ratifying the assignment of the contract, unless he was thereto authorized by resolution of the directors or otherwise showing that the corporation assented thereto. He could not, as president, without authority delegated to him by the corporation, either accept or ratify the acceptance of the contract, as he sought to do by the assignment. The court was clearly right in finding that there was not sufficient evidence to warrant a conclusion of acceptance or ratification of acceptance of that contract. The court might have said that there was no evidence to

warrant the conclusion that the contract was accepted. All the evidence produced in support of the assumption that the contract from the beginning as a contract of the Roanoke Company was entirely consistent with the theory that Baird was selling the ore and limestone after it was mined by Woodruff to the Furnace Company, he to be liable to Woodruff and the Furnace Company liable to him.

We are asked to infer a contract between Woodruff and the Furnace Company because Woodruff tagged and billed the ore to the Furnace Company and charged it to that company on his books, and because the Furnace Company received the ore, made statements of weights and analyses to Woodruff, and credited the ore to Woodruff on its books, although we have on the other side the written contract made at the time, speaking for itself, not dependent on any human testimony, and all the sequence of facts entirely consistent with this document or contract. Clearly the weight of the evidence is that the debt is due Woodruff from Baird and that Baird is entitled to the money owing for ore by the Roanoke Furnace Company. True, the Roanoke Company got the ore and used it in its business; but there was no privity of contract between Woodruff and the Roanoke Furnace Company, and Woodruff must look to Baird for his money, and Baird may collect his money from the Roanoke Company.

The order of the District Court, disallowing the claim, is therefore affirmed.