FIRST NAT. BANK OF MEMPHIS, TENN., v. TOWNER.

(Circuit Court of Appeals, Sixth Circuit.   February 6, 1917.)

No. 2866.

1. BILLS AND NOTES ⊕→242—PLEDGES ⊕→19—LIABILITY OF PARTIES—INDORS-
ER BEFORE DELIVERY.

Under Negotiable Instruments Act Tenn. (Acts 1899, c. 94) § 63, provid-
ing that a person placing his signature upon a note, otherwise than as
maker, drawer, or acceptor, is deemed an indorser, unless he clearly indi-
cates by appropriate words his intention to be bound in some other ca-
pacity, an indorser before delivery is liable only as indorser, not as joint
maker; and the payee of a note given by one corporation and indorsed by
an individual and another corporation, without anything to show that the
indorsers were bound in any other capacity, cannot retain collateral
pledged to secure that note, with the right to retain it to secure any other
obligation, to secure notes given by the other corporation, even if it could
do so in case the two corporations were joint makers.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 542,
547, 548, 550, 551; Dec. Dig. ⊕→242; Pledges, Cent. Dig. §§ 58–63; Dec.
Dig. ⊕→19.]

2. CORPORATIONS ⊕→484(1)—POWERS—LENDING CREDIT.

A corporation organized to buy, gin, manufacture, and sell cotton, cot-
ton seed, and its products, and empowered to borrow money and issue
notes or bonds on the faith of the corporate property, but whose powers
were limited by a provision that by no implication or construction should
it be deemed to possess any powers except those expressly given or neces-
sarily implied from the nature of the business for which the charter is
granted, has no implied power to lend its credit to another corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1815; Dec.
Dig. ⊕→484(1).]

3. BANKS AND BANKING ⊕→182—LOANS—PERSONAL LIABILITY—USER OF
MONEY.

Where money loaned by a bank to one corporation was used for another
corporation, both corporations being controlled by the same stockholder,
such use did not make the latter corporation a debtor to the bank, since,
when the money was loaned, it became the absolute property of the first
corporation, and the rule of equity allowing money to be followed applies
only where the money has the character of a trust fund.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 702;
Dec. Dig. ⊕→182.]

4. BANKS AND BANKING ⊕→179—COLLATERAL SECURITY—BONA FIDE PUR-
CHASER—KNOWLEDGE OF TITLE.

Where the controlling stockholder of two corporations authorized a bank
to retain the bonds of one as security for the debts of the other, the bank
cannot claim the bonds against the creditors of the latter after bank-
ruptcy as a bona fide purchaser from the stockholder, notwithstanding
his claim that he owned the bonds, where the bank had full knowledge of
the entire transaction, and knew that such claim of ownership was based
on a supposition that the controlling stockholder owned both corporations,
since it could not take advantage of that clear mistake of law.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 667–
683; Dec. Dig. ⊕→179.]

5. PLEDGES ⊕→9—BONA FIDE PURCHASER—CONSIDERATION—DEBT OF AN-
OTHER.

The acceptance of a new note for the antecedent debt of a corporation
is not consideration for the pledge of bonds of another corporation, which

⊕→For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
239 F.—28

had no authority to lend its credit, by the controlling stockholder of both corporations, since it did not move to the corporation issuing the bonds, and the bank cannot claim to be a purchaser of those bonds for value.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. § 20; Dec. Dig. ⓒ⇒9.]

6. BANKRUPTCY ⓒ⇒155—RIGHTS OF TRUSTEE—CANCELLATION OF BONDS— FRAUD.

A trustee can, for the benefit of the creditors of a bankrupt corporation, have canceled the bonds of the corporation, and a trust deed securing them, held by one to whom they had been pledged for a debt which had been paid, and who was retaining them as security for the debt of another corporation, for which they could not be held, though there was no fraud alleged, and the bank in good faith believed that it was entitled to hold them.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ⓒ⇒155.]

Appeal from the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Suit by R. P. Towner, trustee in bankruptcy of the Reliance Cotton Company, against the First National Bank of Memphis, Tenn., to require the bank to surrender to the trustee for cancellation certain negotiable bonds and a deed of trust securing them. Decree for complainant, and defendant appeals. Affirmed.

T. K. Riddick, of Memphis, Tenn., for appellant.

St. John Waddell, of Memphis, Tenn., for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. This appeal is from a decree in effect requiring the bank, appellant, to surrender to appellee, as trustee in bankruptcy of the Reliance Cotton Company, a corporation, for cancellation, certain negotiable bonds and a deed of trust securing them, which had been issued and delivered by the bankrupt. The basis of the decree is a finding in substance that, although the bonds had been received by the bank in pledge to secure a loan it made to the Reliance Company and the loan had been fully paid, the bank, erroneously believing it had the right so to do, continued to hold the bonds to secure past-due indebtedness of another and distinct corporation, the Memphis Cotton Oil Company.

The two companies so concerned were Tennessee corporations, the Memphis Company having been organized in 1902 and the Reliance Company in 1905. At the times here in question, B. B. Harvey owned all the shares of stock in both of these companies, except a sufficient number to qualify three persons additional to himself as directors in each company; and the stockholders and directors of each company were the same persons. On July 21, 1913, the stockholders of the Reliance Company met and instructed the directors "to issue $40,000 first mortgage bonds of the company" and to secure them by a trust deed conveying the property of the company located in the states of Tennessee, Mississippi, and Missouri. On the same day the board of directors "authorized and directed" the president and secretary to

execute this trust deed and the bonds in accordance with forms set out in the minutes of the meeting. After the instruments were executed, the president of the company placed the bonds in the hands of B. B. Harvey to "realize money on them * * * for the Reliance Company." It is not shown who delivered the deed of trust, though it appears to have been recorded in the several counties in the states in which the property of the company was located. A promissory note in the name of the Reliance Company for $10,000 and these bonds as collateral security therefor were delivered to the bank by B. B. Harvey. It is agreed in the record that the note was "made by the Reliance Cotton Company, indorsed by·B. B. Harvey and the Memphis Cotton Oil Company," that it was discounted October 13, 1913, that the proceeds were "credited to the account of the Memphis Cotton Oil Company," and that the note "has been paid."

When these bonds were directed to be issued, the Memphis Company was largely indebted to the bank and was also in need of more money. The bank was not willing to make further loans to the Memphis Company upon its own credit, nor upon the bonds which it had previously issued and delivered in pledge to the bank, nor upon the additional individual indorsement of B. B. Harvey. In these circumstances the president of the bank suggested to B. B. Harvey a plan for obtaining additional security and money through the Reliance Company; and this plan was the one adopted and carried out, as stated, through the. instrumentality of that company. But when the company's note was paid, its bonds were neither returned, nor were they or the trust deed canceled. Instead, the bonds were retained by the bank as further security for notes held by it against the Memphis Company, and this was done with the sanction of B. B. Harvey. It is not claimed that the Reliance Company authorized this later use of the bonds, unless it did so through the execution of 'its note before mentioned. We shall now consider the grounds upon which the bank seeks to justify its retention of the bonds; and it is to be borne in mind throughout that the bank's rights are to be determined with reference to those of the bankrupt's creditors.

1. *The form of the $10,000 note.* The note of the Reliance Company provided that "upon the discharge of this obligation" the bank might deliver the instrument (including, of course, the collaterals) to the maker, but that the bank should "have the right to retain the same to answer any other obligation, note, etc., * * * just as if specially pledged under an agreement in the exact terms of this." The right thus reserved plainly had reference to some instrument which the Reliance Company was obligated to pay; but, apart from the bonds themselves, when the note was paid the bank held no·obligation, certainly no express obligation, of the Reliance Company,·and it has not held any since. It is insisted, however, for reasons presently to be stated, that the foregoing provision of the Reliance Company's note empowered the bank to retain the bonds to secure notes executed and delivered to it by the Memphis Company as maker. It may be well to notice here what notes of the Memphis Company were held by the bank at the time the Reliance Company's bonds were applied in pledge

to secure them. The date of payment of the Reliance Company's note was May 15, 1914, and on the following July 27th the Memphis Company's indebtedness to the bank was consolidated into three notes in its favor for $22,000 each. These were demand notes, signed by the Memphis Company as maker, and indorsed by that company and B. B. Harvey. Harvey placed in pledge to secure them $80,000 face value of bonds of the Memphis Company and the bonds now in question of the Reliance Company; and Harvey testified that this was the first time the Reliance Company's bonds were pledged by him "for the debts" of the Memphis Company. The Memphis Company was afterwards declared bankrupt, though the date of adjudication does not appear, and these notes were then unpaid. Two of the notes have since been paid, and, excepting a balance of about $9,000, also the third note, through proceeds derived from a sale made by the bank of the Memphis Company's bonds. Now, as we interpret the argument that the Reliance Company's bonds might, under the provision of its note, be held to secure all or any of these notes of the Memphis Company, it is twofold: (a) As to the manner in which the Reliance Company's note was executed; and (b) a claim that the Memphis Company's debts to the bank may be treated as really the debts of both corporations.

[1] As respects the first of these grounds, all that appears touching the execution of the Reliance Company's note is that it was "made by the Reliance Company, indorsed by B. B. Harvey and the Memphis Cotton Oil Company." It is said that the Memphis Company, as well as Harvey, indorsed the note before delivery, and so became a joint maker, and, as we understand .counsel, that the above quoted provision of the note is broad enough to justify retention of the bonds of the Reliance Company to secure the debts of its joint maker—the Memphis Company. Assuming, though it is not distinctly shown, that the Reliance Company's note was indorsed before delivery, as stated, the contention of counsel overlooks the fact that before this transaction occurred the Uniform Negotiable Instruments Act was adopted in Tennessee. While counsel correctly state the rule concerning the effect of such indorsements which prevailed in Tennessee (not to speak of other jurisdictions) prior to the adoption of the act referred to, yet the decisions cited in support of the rule were themselves rendered before the enactment of the statutory rule.[1] According to section 63 of the Negotiable Instruments Act, passed in 1899, the Memphis Company as well as Harvey was simply an indorser, since nothing is shown which "clearly indicates by appropriate words" an "intention to be bound in some other capacity" (Acts Tenn. 1899, p. 152, and see sections 64 to 68); and the statutory rule thus distinctly prescribed may safely be regarded as applicable here. Pharr v. Stevens (1911) 124 Tenn. 669, 673, 674, 139 S. W. 730. True, in that case Bank v. Busby, 120 Tenn. 652, 13 S. W. 390, decided three years earlier, was

---

[1] The decisions so cited are Bank v. Lumber Co. (1898) 100 Tenn. 479, 47 S. W. 85; Morrison Lumber Co. v. Lookout Mountain Hotel Co. (1893) 92 Tenn. 6, 20 S. W. 292; Providence Assurance Society v. Edmonds (1895) 95 Tenn. 53, 31 S. W. 168; Logan v. Ogden (1898) 101 Tenn. 392, 47 S. W. 489.

distinguished; but as there is no proof in the instant case which tends to show that either of the indorsers intended to be bound in any other capacity than as an indorser, each would be so considered under both of those decisions. If, then, it were conceded that under the provision in question of the note the pledge of either of two joint makers might be retained to secure a debt of the other, it would by no means follow that this could rightfully be done as respects a debt of an indorser; no such claim is even suggested.

[2] We may now turn to the second ground of counsel's insistence: That the Memphis Company's debts to the bank were really the debts of both corporations. Here again the form of the note is relied on, at least in part. Admittedly the notes of the Memphis Company were not signed by the Reliance Company. It is not intimated that the Reliance Company received all the money which the bank parted with on the faith of the Memphis Company's notes; and to hold that the Reliance Company is chargeable with all these debts would be to affirm that the company had power to make itself answerable for debts, at least in some substantial amount, of the Memphis Company. The question hence arises whether the Reliance Company could guarantee, or pledge its bonds to secure, debts of the Memphis Company. This must depend upon the powers vested and limitations imposed by the Reliance Company's charter. The purposes of the company's incorporation are:

"Buying, ginning, manufacturing, selling and merchandising baled cotton, seed cotton, cotton seed, cotton seed products, feed, and fertilizers produced from same and other substances, and other articles of commerce of general manufacture which come within the line of said business."

The company was empowered "to borrow money and issue notes or bonds upon the faith of the corporate property"; but all the powers of the company were limited as follows:

"By no implication or construction shall the corporation be deemed to possess any powers except those hereby expressly given or necessarily implied from the nature of the business for which the charter is granted."

Thus the Reliance Company acquired no express power under its charter to lend its credit to another corporation; and, as was said in Ward v. Joslin, 186 U. S. 142, 149, 22 Sup. Ct. 807, 809 (46 L. Ed. 1093):

"It must be assumed that the general rule is applicable that such companies have no implied power to lend their credit." [2]

---

[2] The familiar rule that one corporation is impliedly prohibited from guaranteeing or otherwise agreeing to pay the debts of another has prevailed so generally as fairly to warrant omission of citations in its support, though it may be well here to call attention to the following: Humboldt Min. Co. v. American Manuf'g, Mining & Milling Co., 62 Fed. 356, 361, 362, 10 C. C. A. 415, and citations (C. C. A. 6), in which Judge Taft distinguished Marbury v. Land Co., 62 Fed. 335, 10 C. C. A. 393, decided at the same session; In re Liquor Dealers' Supply Co., 177 Fed. 197, 199, 200, 101 C. C. A. 367 (C. C. A. 7), where the fact that the corporate officer specially empowered to conduct the transaction owned most of the stock in the two corporations concerned was held not to invest the guaranteeing corporation with "authority to exceed its powers wherein the interests of creditors and the public are involved";

[3] However, there is one feature of Harvey's testimony which might at first view be thought to avoid this rule, and upon the theory that at least a portion of the bank's claim against the Memphis Company, which is in form the debt of that company, is in reality the debt of the Reliance Company. Harvey testified that the money received "from these different notes" was used for both corporations, and that as he "owned the whole thing" he did not "think it necessary to keep a separate account." It is to be inferred that the notes he refers to included alike the notes of the Memphis Company and the note of the Reliance Company, but since the latter note has been paid it may safely be eliminated from the consideration of this portion of Harvey's testimony. Accepting as correct his testimony concerning the use made of the money obtained on the Memphis Company's notes; it fails to connect the Reliance Company with the bank. The most that can be said of this testimony is that it gives rise to an inference that the Reliance Company became indebted to the Memphis Company, but neither this testimony nor anything contained in the record justifies a further inference that there was an intent to secure any such indebtedness through the pledge of the Reliance Company's bonds.

It is not pretended, much less shown, that any of the money represented by the notes of the Memphis Company was loaned by the bank upon any promise or request of the Reliance Company, or upon any understanding between the bank and either of the companies, or even with knowledge on the part of the bank, that the money was to be used for the benefit of the Reliance Company. The bank, therefore, must avoid the general rule that one person cannot make another his debtor without that other's consent. The law, it is true, will in certain cases imply the existence of a contract where the facts do not, and upon the principle that one may not enrich himself unjustly at another's expense; but this principle can afford the bank no claim against the Reliance Company. All the money obtained upon the notes of the Memphis Company was parted with by the bank upon the faith of that company's promise and the pledge of its own bonds, and thus, since no fraud is either alleged or proved, the Memphis Company's title to the money became absolute; whatever portion of this money, and the amount is not shown, Harvey may have used for the benefit of the Reliance Company, was therefore money of the Memphis Company and not of the bank; accordingly the bank cannot invoke the rule that allows money to be followed in equity, for that rule is confined to cases in which the money has the character of a trust fund. Peters

Mapes v. German Bank of Tilden, 176 Fed. 89, 90, 99 C. C. A. 609 (C. C. A. 8), by Judge Sanborn; Kellogg-Mackay Co. v. Havre Hotel Co., 199 Fed. 727, 733, 118 C. C. A. 165 (C. C. A. 9); In re Prospect Worsted Mills. 126 Fed. 1011, 1014 (D. C.), per Lowell, J.; Elevator Co. v. Memphis & Charleston Railroad Co., 85 Tenn. 703, 706, 5 S. W. 52, 4 Am. St. Rep. 798; and the applicability of this rule to railroad corporations was not only affirmed in Louisville, etc., Ry. Co. v. Louisville Trust Co., 174 U. S. 552, 567, 19 Sup. Ct. 817, 43 L. Ed. 1081, but such a guaranty or any contract to give one, unless authorized by statute, was stated to be "beyond the scope of the powers of the corporation, and strictly ultra vires, unlawful and void, and incapable of being made good by ratification or estoppel."

v. Bain, 133 U. S. 670, 693, 10 Sup. Ct. 354, 33 L. Ed. 696; Brennan v. Tillinghast, 201 Fed. 609, 613, 120 C. C. A. 37 (C. C. A. 6); Cole v. Bates, 186 Mass. 584, 587, 72 N. E. 333. The bank's position thus amounts to a contention that it can maintain a claim against the Reliance Company upon the theory that the law implies a right in favor of a creditor against those persons who may be indebted to his debtor; but clearly there is no principle of law that will sanction any such theory, for the express contract between the creditor and his own debtor leaves no room for an implied contract between the creditor and his debtor's debtor. King of Spain v. Oliver, Pet. C. C. 276, 288, Fed. Cas. No. 7,813 (C. C.), decided by Mr. Justice Washington on circuit. It is impossible, therefore, to deduce any relation of debtor and creditor, either of an equitable character or otherwise, between the bank and the Reliance Company.

It results from all the foregoing considerations that the above-quoted provision of the Reliance Company's note, however broadly interpreted, furnishes no justification for the retention of the bonds.

2. *Harvey's stock ownership in the Reliance Company gave him no title to the bonds.* It is claimed that B. B. Harvey repeatedly stated to the bank and the bank believed that he owned these bonds; it is not shown, nor is it very important, just when these statements were made, though it appears that they were in fact made. The only basis for this assertion of Harvey or for the belief of the bank, as the president of the bank evidently knew, was Harvey's stock ownership in the Reliance Company. In the course of his direct testimony Harvey said in respect of the two corporations in question:

"I figured one was in the right-hand pocket and the other in the left."

Again:

"Q. You heard Mr. Omberg [president of the bank] state you were the owner of the bonds? A. That was true; I owned the corporations and owned the bonds. Q. You made the statement you owned the bonds? A. Yes, sir; I didn't hesitate, because I owned the corporations. Q. That was your idea of the whole thing? A. That was my idea; it was my property."

Moreover, the president of the bank testified in his cross-examination:

"Q. Now, at the time you got them, you knew they were the Reliance Cotton Company bonds? A. We also thought we knew they belonged to Mr. Harvey, individually. Q. Mr. Omberg, didn't you understand that, or didn't you suppose that, from the fact that Mr. Harvey was the owner or the principal stockholder in the Reliance Cotton Company—in fact, owned practically all of it? A. Yes; Mr. Harvey himself told us he was practically the sole owner Q. And he assumed, and you assumed, that made him the owner of the bonds of the corporation? A. He had possession of the bonds, negotiable bonds, and he put them up. I don't know that we questioned the title to them. They were negotiable, in his hands, and payable to bearer. Q. You knew how they were issued, and the purpose for which they were issued, when they were issued? A. Yes; the whole thing was done with our knowledge."

It is not clear whether the learned counsel for the bank claim that Harvey's ownership of stock in the Reliance Company operated to invest him also with the ownership of the bonds; it is to be inferred from the record that counsel disavowed this theory in the court be-

low. However this may be, Harvey could not acquire title to the bonds in this way. We shall assume for present purposes that the Reliance Company was duly organized under and according to the laws of Tennessee, for nothing to the contrary is suggested. We have already stated the purposes of the corporation. Its authorized capital stock was $100,000, divided into shares of $100 each. At the first meeting of the incorporators five persons subscribed for 800 shares, B. B. Harvey and W. M. Black each for 398 shares, two persons each for 1 share, and W. W. Barbour (who was president of the company at the time the bonds in question were issued) for 2 shares. Harvey subsequently purchased the shares of Black, but the other 4 shares are apparently outstanding. None of the small shareholders paid for his stock, though no reason appears why these holders could not be required to pay for their shares. Further, a subscriber for stock in a private corporation, even a director of the company, may obtain title to his stock by gift, or hold it upon a trust, and still be legally qualified to act, the one as a stockholder and the other as a director; both are to be regarded, certainly in a case like this, as corporate stockholders, and the director also as a corporate official. Kardo Co. v. Adams, 231 Fed. 950, 965, 146 C. C. A. 146 (C. C. A. 6); Salomon v. Salomon & Co., [1897] A. C. 22, 46.. Directors and officers of the company were chosen annually from the time of the organization of the corporation at least until July 21, 1913, when the bonds and deed of trust in question were required by the stockholders and board of directors to be issued. While the date on which the company was adjudicated bankrupt is not shown in the record, concededly the case under review was begun and the decree entered upon the theory that the bankruptcy of the corporation had been judicially declared. In view of these facts, it is plain that the corporate organization, the legal entity, was preserved at least throughout the period of the present transactions.

It is settled that a corporation, the artificial being, not the stockholding body, owns the property; that the corporation alone can transfer the property, or charge it with liens, or the like; and that the corporation can act only through prescribed agencies, and subject to the limitations imposed by law. Humphreys v. McKissock, 140 U. S. 304, 312, 11 Sup. Ct. 779, 35 L. Ed. 473; Gottfried v. Miller, 104 U. S. 521, 528, 26 L. Ed. 851; Porter v. Pittsburg Bessemer Steel Co., 120 U. S. 649, at 670, 7 Sup. Ct. 741, 30 L. Ed. 830; Woodruff v. Shimer, 174 Fed. 584, 586, 98 C. C. A. 430 (C. C. A. 3); American Preservers' Co. v. Norris, 43 Fed. 711, 714, and citations (C. C., per Thayer, J.); Fitzgerald v. Missouri Pac. Ry. Co., 45 Fed. 812, 818 (C. C., per Caldwell, J.); Electric Ry. Co. v. Jamaica & B. R. Co., 61 Fed. 655, 678, 679 (C. C., per Townsend, J.); In re Roanoke Furnace Co., 166 Fed. 944, 952 (D. C., by present Circuit Judge McPherson); Rough v. Breitung, 117 Mich. 48, 54, 75 N. W. 147; England v. Dearborn, 141 Mass. 590, 591, 6 N. E. 837. This doctrine prevails where even the entire capital stock is owned by a single person, and this, too, in Tennessee, where the present corporation was created. Parker v. Bethel Hotel Co., 96 Tenn. 252, 275, 277, 34 S. W. 209, 31 L. R. A. 706; and see Porter v. Pitts-

burg Bessemer Steel Co., supra, 120 U. S. at page 670, 7 Sup. Ct. 741, 30 L. Ed. 830; Woodruff v. Shimer, supra, 174 Fed. at pages 585, 586, 98 C. C. A. 430; Fitzgerald v. Missouri Pac. Ry. Co., supra; England v. Dearborn, supra; Baldwin v. Canfield, 26 Minn. 43, 53, 58, 1 N. W. 261, 276; Wheelock v. Moulton, 15 Vt. 519, 521; City of Louisville v. McAteer (Ky.) 81 S. W. 698, 1 L. R. A. (N. S.) 766. It must follow that the absolute ownership of the bonds in question was in the corporation itself until they were delivered in pledge to the bank to secure payment of the company's note for $10,000, and that upon payment of the note the company's ownership of the bonds and its right to their exclusive possession again became absolute, unless it can be said that through their negotiable quality (in connection with Harvey's asserted ownership of them, as before pointed out) the bank acquired a right to apply them as security for the Memphis Company's debt.

[4] 3. *The bank, in retaining the bonds as security for the Memphis Company's debt, is not a holder in due course.* It is earnestly contended that the bank is entitled to rely on the negotiable character of the bonds and Harvey's asserted ownership of them to sustain its alleged right to retain them in pledge. This takes no account of the bank's knowledge of the origin of the bonds, or of the accomplishment of the object of their issue before their retention to secure the Memphis Company's notes. We have seen that the president of the bank testified in reference to the transaction and the bonds as follows:

"Q. You knew how they were issued, and the purposes for which they were issued, when they were issued? A. Yes; the whole thing was done with our knowledge."

It was found by Judge McCall that, as respects the use of these bonds to secure debts of the Memphis Company, the bank did not obtain them in due course; and we think this conclusion is sustained by the record. The bank knew that the Reliance Company had issued the bonds to secure its own note, and the bank dealt with the company as the owner of the bonds; this was inconsistent with any idea that the bonds were owned by Harvey. The real basis for Harvey's assertion and the bank's assumption (or belief, if it may be so called) that he was the owner of the bonds was the supposition of each that he owned the corporation. No other conclusion is reconcilable with the admissions of Harvey and the evident knowledge of the bank's president; but it scarcely is necessary to say that the bank cannot take advantage of this clear mistake of law.

[5] Further, even if it were important, the Reliance Company received no consideration at the time its bonds were applied in pledge to secure notes of the Memphis Company. It is argued that the previous loans to the Memphis Company, which were consolidated and represented by demand notes when the bonds were last pledged, were a sufficient consideration to sustain this pledge; but the consideration (assuming that such a transaction amounted to one) moving to the Memphis Company was not a consideration upon which the Reliance Company could lend its credit, if in truth any consideration would uphold such an agreement. Inevitably then, the bank fails in two essential particulars to show that it is a "holder in due course" within the

meaning of the Tennessee Negotiable Instruments Act: In the first place, it did not take the bonds "for value"; and, secondly, it had notice of the "defect in the title" of Harvey to the bonds. Acts Tenn. 1899, p. 150. The question, therefore, does not arise, upon which counsel place so much stress, whether in view of the negotiable character of the bonds it can be said that the bank was put upon notice as to Harvey's title; for the truth is the bank knew it was withholding bonds of the Reliance Company, not bonds of Harvey, to secure debts of the Memphis Company. As respects the Reliance Company the pledge was ultra vires and void. Hence the knowledge of the bank was fatal to the transaction; it was, indeed, quite as fatal as if the transaction had been conceived and executed with intent to defraud the Reliance Company, or as if the issue and first pledge of the bonds had been made with a like purpose; for, after all, knowledge of fraud is but one of the grounds for denying to holders of negotiable instruments the status of a holder in due course. We may add that in view of these facts Judge McCall was right in holding that the instant case cannot be effectively distinguished in principle from the decision of this court in Germania Safety Vault & Trust Co. v. Boynton, 71 Fed. 797, 801, 19 C. C. A. 118, 121, where, in speaking of negotiable corporate bonds that had been pledged to secure the debt of another, the late Mr. Justice Lurton said:

"Its [the company's] obligations entered into for that purpose would be void in the hands of one who took them with notice."

See, also, Hatch v. Johnson Loan & Trust Co., 79 Fed. 828, 836 (C. C.); Wheeler v. Home Savings Bank, 188 Ill. 34, 38, 58 N. E. 598, 80 Am. St. Rep. 161.

The decisions themselves upon which counsel rely in support of their claim that the negotiable character of the bonds warrants the retention in issue here, as, for example, Murray v. Lardner, 69 U. S. (2 Wall.) 110, 121, 17 L. Ed. 857, recognize the rule that no protection is furnished to persons dealing in negotiable instruments with notice of facts affecting the validity of the transactions. And see King v. Doane, 139 U. S. 166, 173, 11 Sup. Ct. 465, 35 L. Ed. 84.

[6] Attention should here be called to counsel's insistence that fraud is not specifically alleged or proved in respect of any of the transactions presented and, on the contrary, that the evidence shows honesty of purpose on the part of both the bank and Harvey. Nor can it escape attention that the case does not present any question of preference under the bankruptcy law; it may be assumed, though it does not appear in the record, that the transactions in issue occurred more than four months prior to the commencement of the bankruptcy proceeding. We do not regard either this contention of counsel or the date of the bankruptcy as material in a case like this. It is enough to know, since it appears in the evidence, that the Reliance Company has creditors; that this company was dealing, on the one hand, with persons who must here be assumed to have just claims against it; and that Harvey, on the other hand, was undertaking to dispose of the property of the company in substantial part, if not in whole, through pledge of the company's bonds to secure a debt not of that company but of the Memphis Com-

pany. Considering the rights, then, of the respective parties who are here making claims to the bonds, the bank, although in possession of the bonds, is neither a creditor nor pledgee of the Reliance Company, while the trustee is claiming surrender and cancellation of the bonds for the benefit of acknowledged creditors of that company, the bankrupt; in other words, the bank holds the bonds without right, while the trustee has, through operation of law, succeeded to the title of the bankrupt to the bonds. Bankruptcy Act July 1, 1898, c. 541, § 70, 30 Stat. 565 (Comp. St. 1913, § 9654). And, since the bonds are not "in the custody of the bankruptcy court," he must also be "deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied." Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (Comp. St. 1913, § 9631); Massachusetts Bonding & Ins. Co. v. Kemper, 220 Fed. 847, 851, 136 C. C. A. 593 (C. C. A. 6). It follows that the effect of the bank's retention of the bonds was wrongfully to convert them to its use, and that the trustee is entitled to have them, as also the trust deed, surrendered for purposes of cancellation.

The decree will be affirmed, with costs.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes