### SHEATZ v. MARKLEY et al.

(Circuit Court of Appeals, Third Circuit. January 30, 1918. Rehearing Denied March 12, 1918.)

#### No. 2304.

1. ASSIGNMENTS ⬤➡58—PARTIAL ASSIGNMENTS—EFFECT.

It is the rule in the federal courts that, unless a debtor agrees to accept a partial assignment of a debt due by him, he is not bound thereby.

2. CORPORATIONS ⬤➡406(3)—SECRETARY—AUTHORITY OF.

That the secretary and treasurer of a corporation was in charge of its office and accounts does not show that he was empowered to accept a partial assignment of a debt due by the corporation, in the absence of evidence that he was so held out.

3. CORPORATIONS ⬤➡426(2)—SECRETARY AND TREASURER—AUTHORITY—RATIFICATION.

Where the secretary and treasurer of a corporation was not capable of binding the corporation by assenting to a partial assignment, he could not bind it by purporting to ratify his unauthorized act.

4. EVIDENCE ⬤➡155(8)—ASSIGNMENTS—PARTIAL ASSIGNMENTS.

Where contractors sued a corporation to the use of plaintiff, to whom they had made a partial assignment of a debt due them, and an auxiliary ledger evidencing the assignment was introduced in evidence, other books of the corporation, showing transactions between the contractors and the corporation, were admissible.

5. EVIDENCE ⬤➡234—ADMISSIONS—ADMISSIBILITY.

In an action against corporation by contractors, to the use of one to whom they had made a partial assignment of a debt due them, evidence of admissions made by the contractors that the contract on which the claim was based had not been performed by them though occurring after the alleged partial assignment, are admissible in evidence; the acceptance of the assignment having been denied, and the time that the admissions were made going only to their probative force.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action by John R. Markley and Isaiah B. Miller, to the use of E. Kirby-Smith, against the International Lumber & Development Company, whose receiver, John O. Sheatz, was afterwards substituted as defendant. There was a judgment for plaintiffs, and defendant brings error. Reversed, and new trial awarded.

Owen J. Roberts, Olin Bryan, and Harry Reiss Axelroth, all of Philadelphia, Pa., for plaintiff in error.

Henry J. Scott, of Philadelphia, Pa., and Fred H. Atwood, of Chicago, Ill., for defendants in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

---

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

McPHERSON, Circuit Judge. In this action the use plaintiff, E. Kirby-Smith, sued the International Lumber & Development Company (whose receiver, John O. Sheatz, was afterward substituted as defendant), claiming to recover money due or to become due by the company to the legal plaintiffs, Markley & Miller.

He based his claim on Markley & Miller's assignment to him on August 28, 1911. Several years before that date they had contracted with the company to cultivate and develop a ranch in Mexico, and had employed Kirby-Smith as manager; his duties requiring him to live on the ranch and to look after the work on the ground. In 1911 he gave up his employment, and on August 28 he met Markley & Miller in Chicago, where his claim against them was compromised, and the sum of $105,000 was agreed upon as due. Thereupon they executed an assignment of that amount out of such money as might then be due or might become due thereafter upon their contract with the company. They also signed notes aggregating $105,000, and drew drafts upon the company in the same amounts as the notes and falling due on the same dates. The plaintiff offered evidence to the effect that C. M. McMahon, the company's secretary and treasurer, was present at the settlement and agreed to the assignment on behalf of the company, and also offered evidence tending to show that Markley & Miller had performed the original contract. He asserted that during the year 1912 the company agreed with Markley & Miller that about $364,000 was due to them under the contract, and proved the payment of the first draft, for $4,000, and the refusal of the others.

The assignment was only partial, and the use plaintiff undertook the burden of showing the company's acceptance, as well as the fact that it owed to Markley & Miller, either on August 28 or thereafter, enough money to pay the amount assigned. In the effort to establish these facts, he offered evidence of McMahon's presence in Chicago, and his declaration at the conference there that the company owed or would owe Markley & Miller $400,000 under the contract, and would pay the drafts covering their assignment. This raised the question of McMahon's authority to bind the company, and to support his authority the plaintiff called the chief bookkeeper, who testified that McMahon conducted the company's correspondence, had full direction of its funds, and was in general charge of the office. The by-laws were not offered, nor was any resolution of the board of directors referring to McMahon's authority. It appeared that when he returned from Chicago he gave the bookkeeper a list of the drafts, so that a memorandum of their amounts and due dates might be made, and that he directed the payment of the first draft, and the dishonor of the others. The plaintiff also offered evidence that Markley & Miller had agreed to pledge certain collateral security with their notes, and he attempted to show that the company had taken part in carrying out this agreement. On this point the facts were these: The company's stock was to be paid for in installments; until all the installments were paid, the subscribers received, not the stock itself but a form of contract, and it was a definite amount of these stock contracts that Markley & Miller agreed in August to pledge as collateral.

In September, under some arrangement that was not fully explained, the company issued stock contracts in the name of Markley & Miller, who assigned them in blank and pledged them as security for the notes. On some of these contracts the stock was afterwards issued, apparently in the name of a dummy. It was not proved that the company issued the stock contracts for the purpose of carrying out Markley & Miller's assignment, or with knowledge thereof. This is an outline of the plaintiff's case on the subject of the company's acceptance of the assignment.

On the other question—whether Markley & Miller had performed their contract with the company, and, if so, how much was due thereon—the plaintiff offered the following evidence: He attempted to prove the company's declaration against interest, contained in an account with Markley & Miller, kept in a book that was produced at the trial and called an "auxiliary ledger." He called the bookkeeper to identify the volume as an official record of the company, but the witness testified that, although the book had been kept in the principal office, it was not one of the company's official records, and did not contain all the entries that were found in other books concerning Markley & Miller's debits and credits. This ledger, however, was admitted in evidence as a declaration against interest, and the account therein showed that the company, at and after August 28, owed the contractors much more money than the amount assigned. The receiver attempted to cross-examine the witness, in order to show what books of the company contained the complete transactions with Markley & Miller, and attempted later, as a part of his own case, to offer other books of the company to show the true state of their account. But the trial judge declined to allow the cross-examination, and declined also to admit the other books as part of the receiver's case, for the purpose of showing the account as a whole. The receiver then offered to prove that certain specific items, not contained in the "auxiliary ledger," were proper charges against Markley & Miller; but the offer was excluded, on the ground that these items had been charged against one or other of the contractors individually. Apparently neither Markley nor Miller had done any business with the company, except under the contract of October, 1904.

The court asked the jury to find (1) whether McMahon had actual authority to bind the company by his acceptance of the assignment, or whether he had been previously held out as having such authority; and (2) whether the auxiliary ledger showed a sufficient indebtedness to Markley & Miller at and after August 28. As part of the charge, the jury was instructed that sufficient facts (if believed) were in the case to establish McMahon's authority, but that the jury must determine from the evidence whether McMahon did accept the assignment for the company.

[1-3] We regret that another trial of this case must be had, but we see no way to avoid it. On the two fundamental questions in dispute erroneous decisions were made that cannot be disregarded. Whatever the rule may be in other tribunals, the rule in the federal courts is that, unless a debtor agrees to accept the partial assignment of a

debt due by him, he is not bound thereby. Mandeville v. Welch, 5 Wheat. 277, 5 L. Ed. 87, 1 Rose's Notes (Rev. Ed.) 1041; 2 Rul. Case Law, 618, § 26. This being so, the plaintiff was bound to prove that the company had accepted Markley & Miller's assignment, and this in turn depended essentially upon McMahon's authority. So far as appears, he was not expressy authorized to bind the company, and we cannot assent to the proposition that such authority may be implied from the fact that he was discharging the customary duties of secretary and of treasurer. And there was no evidence that he had been held out to any one as so empowered; nothing was proved, except that he was in charge of the company's office and accounts—as might be expected from a secretary and treasurer—attending to the correspondence, keeping the accounts, and receiving and paying out the money. If, with the company's knowledge and implied assent, he had been usurping the corporate powers, and had come to represent the company for most, if not for all, corporate purposes, this fact was not made to appear, and in the absence of evidence we must decline to accept the assertion of counsel on this subject. It is hardly necessary to add that, if he was not capable of binding the company by assenting to the assignment, he could not ratify his own unauthorized act, unless the company gave him power so to do. Woodruff v. Shimer (C. C. A. 3) 174 Fed. 584, 98 C. C. A. 430.

[4] Upon the other question, also, we cannot sustain the rulings at the trial. We do not pass upon the correctness of restricting the receiver's cross-examination of the bookkeeper. In any event, the ruling did no serious harm, for the receiver had a subsequent opportunity to go into the same subject when his turn came to be heard. But the opportunity was of no avail; the offers he made were excluded, and here we think a mistake was made. Assuming the "auxiliary ledger" to have been an official book of the company—and upon the evidence before us this seems to have been a fairly disputable point concerning which we think the jury should have received more definite instructions—it did not follow that the other books of the company might not throw important light upon the true state of the account, and if they did afford such help they should have been received and considered. The fact that some items sought to be proved may have been entered on what were formally the individual accounts of the contractors was not conclusive. On the record before us, the only transactions Markley & Miller had with the company grew out of their contract, and the appearance of some transactions in a seemingly individual account, while others appeared in a firm account, was open to explanation. In a word, the relations between the company and the contractors should have been thoroughly investigated, and for this purpose we think the books as a whole (speaking, of course, in general terms) were relevant.

[5] We are of opinion, also, that the court should have admitted the receiver's offer to prove admissions by Markley tending to show that the contract of October, 1904, had not been performed. The fact that these admissions were made in December, 1912, was not sufficient to exclude them. We are dealing, not with a situation where

the debtor had accepted the assignment, but with a situation where the acceptance itself was a matter of dispute, and where the performance of the contract, and therefore the existence of a fund, was also in controversy. It was essential to determine whether the company owed Markley & Miller anything, and, if so, how much—in other words, whether in August, 1911, Markley & Miller had any valuable right to assign. On this question the admission of Markley, that the original contract had not been performed, was evidence, and we do not see that its competency would be affected by the fact that it was made in 1912. Under the circumstances the right of the use plaintiff could not be greater than the right of the legal plaintiffs, although of course the probative value of the admissions might not be as great as if they had been made before the assignment was executed. The date of making them might be a reason for regarding them with caution, but it would not be sufficient to exclude them altogether. Certainly, if there was nothing of value to assign in August, 1911, the assignment had no effect, and upon this point Markley's admissions should have been received.

We need not take up the assignments of error in detail. We have said enough to indicate our opinion about the proper course of the trial, and enough, we hope, to be a sufficient guide when the controversy comes again before the District Court.

The judgment is reversed, and a new trial is awarded.