# CASES

## ARGUED AND DETERMINED

### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS, THE DISTRICT COURTS, AND THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

### MARKLEY et al. v. SHEATZ.*

(Circuit Court of Appeals, Third Circuit. January 3, 1922. Rehearing Denied February 24, 1922.)

### No. 2747.

1. **Corporations** ⚙➠433(1)—**Evidence held not to warrant submitting issue of officer's authority to accept partial assignment.**

   Evidence *held* insufficient to warrant submitting to jury issue as to authority of the secretary of a corporation to bind it by acceptance of an assignment of a portion only of debt owed by it.

2. **Corporations** ⚙➠432(12)—**Evidence held not to show ratification of agent's assent to assignment of portion of debt owed by company.**

   Evidence that, after secretary assented to a partial assignment of a debt owed by a company, it delivered stock subscription contracts mentioned in the contract to the assignees, *held* not to establish ratification of the assent, in absence of evidence that when such contracts were delivered the company knew of the arrangement.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action by John R. Markley and another, to the use of E. Kirby-Smith, against John O. Sheatz, receiver of the International Lumber & Development Company. Judgment for defendant on a directed verdict, and plaintiffs bring error. Affirmed.

Vernon R. Loucks, of Chicago, Ill., and Henry J. Scott, of Philadelphia, Pa., for plaintiffs in error.

Owen J. Roberts, of Philadelphia, Pa., for defendant in error.

Before WOOLLEY and DAVIS, Circuit Judges, and LYNCH, District Judge.

WOOLLEY, Circuit Judge. This case is here on a second writ of error, raising again the question of McMahon's authority to bind his company by accepting a partial assignment of its debt, before decided adversely to the plaintiff on grounds appearing in an opinion reported

---

⚙➠For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 258 U. S. —, 42 Sup. Ct. 462, 66 L. Ed. —.

at 249 Fed. 315, 161 C. C. A. 323. Referring to the opinion for a statement of the case, it is sufficient to say that Markley and Miller entered into a contract with the International Lumber & Development Company whereby they undertook, for a long period at a large return, to develop and bring to bearing the company's plantations in Mexico. In performing the contract, they had become indebted to E. Kirby-Smith—their manager on the ground—in a sum, the amount of which was in dispute. In compromise, Markley and Miller gave Kirby-Smith several notes in different amounts aggregating $105,000, accompanied by drafts upon the company for like amounts falling due on the same dates, the whole to be secured by stock subscription contracts of the company. It is in evidence that when this adjustment was made, Mc-Mahon, the company's secretary and treasurer, was present; that he represented the indebtedness of the company to Markley and Miller to be in excess of the amount assigned by them to Kirby-Smith; that, acting for the company, he agreed to accept the partial assignment of its indebtedness and pay the Kirby-Smith drafts when presented; and also to furnish Markley and Miller stock subscription contracts for use as collateral to Kirby-Smith. One draft was presented and honored; payment of the remainder was refused. Later, Markley and Miller brought this action against the receiver of the International Lumber & Development Company, for the use of E. Kirby-Smith.

At the trial the court submitted to the jury the question of Mc-Mahon's authority to bind the company by his acceptance of the partial assignment. After judgment for the plaintiff the case came here on writ of error.

This court followed closely the rule in federal courts that unless a debtor agrees to accept the partial assignment of a debt due by him, he is not bound thereby, Mandeville v. Welch, 5 Wheat. 277, 5 L. Ed. 87; 1 Rose's Notes (Rev. Ed.) 1041; 2 R. C. L. 618, § 26; and, holding the plaintiff must prove that the company had accepted Markley's and Miller's assignment, inquired into McMahon's authority to speak for the company.

This court found that the evidence did not disclose express authority from the company to McMahon so to bind the company, or any authority to be gathered from conduct of the company in holding out McMahon as its agent or officer. Neither could it discover ratification by the company of McMahon's unauthorized act. The judgment was reversed and a new trial awarded. The plaintiff at the second trial sought to cure the defects in the evidence of the first trial by proving not only what he had proved before but something more. This he regarded as sufficient to establish McMahon's authority. The learned trial judge was of another opinion and accordingly directed a verdict for the defendant. Hence the present writ of error.

In reaching a decision on this writ of error, we have taken the case on the first writ as the starting point and have pursued the inquiry whether on the second trial there was enough new evidence to raise the case out of its situation at the first trial. This involved an appreciation of all the facts and admissible inferences in the case for the purpose of determining whether there was evidence which, if it had

been submitted to the jury, would have sustained a finding that Mc-Mahon had authority, express or implied, to bind the company by agreeing to accept a partial assignment of its debt, or, a finding that, being without antecedent authority, the company subsequently ratified his act.

This controversy had its beginning in the affairs of the International Lumber & Development Company. While wrongdoing is not, in this instance, imputed to any of the parties before us, reference to what were at least informalities in the business transactions of that adventurous concern explains the difficulty this court has twice had in reaching a decision. The difficulty is, perhaps, one of judicial procedure. If no rights were involved except those of the actors in the transaction and we were at liberty to follow their line of conduct in all its irregularities, we might, in a search for equities, incline to the conclusion insisted upon by the plaintiff. If, however, we are to follow rules of law—as we must—and, laying them on the transaction as we find it, determine the law of the case by their measure, we are driven to a result which, though involving hardship, is nevertheless inevitable. The trouble, we feel, is with the case, not with the law.

[1] To strengthen the case of express authority in McMahon to accept the partial assignment in question, the plaintiff at the second trial introduced the company's by-laws showing the duties and authority of its secretary and treasurer—the position held by McMahon—and showing also the appointment of an executive committee—of which McMahon was a member—defining its duties and authority. Without reciting this evidence or repeating here the consideration we have given it, it is sufficient to state our conclusion that the evidence weakens rather than strengthens the claim of McMahon's authority.

Feeling that the court might not find authority expressly given by the company to McMahon, as its secretary and treasurer, to execute a contract on its behalf imposing on it the exceptional obligation of paying a part of its debt to one other than its creditor, the plaintiff at the second trial introduced evidence to show such authority from conduct of the company in holding out McMahon as its general officer or managing agent vested with power, prima facie, to do anything which the company could authorize or ratify. Bearing on the question of McMahon's authority derived from conduct of the company in holding him out as one clothed with such authority, counsel for the plaintiff, by commendable diligence, have called to our attention many cases. We shall not stop to pass them in review. It is enough to say that we have attentively considered them in close relation with the evidence. This evidence, or so much of it as is new and therefore to be weighed with the evidence which at the first trial we thought insufficient, consists mainly of an estimate by McMahon's secretary of the breadth of his authority gathered from the diversity of his transactions. These transactions relate chiefly to the sale of stock—apparently the company's main business—with reference to which McMahon had a contract with the company in whose performance there arose the next new matter introduced in evidence, namely, the adjustment of death claims, payment for which McMahon, under his contract, was liable. Hence his active interest in dealing with counsel

and contestants. This line of evidence illumines the character of the company's business without establishing McMahon's authority to bind the company outside its scope.

[2] The remaining question concerns the company's subsequent ratification of McMahon's unauthorized acceptance of the assignment. The act on which ratification is based was the delivery by McMahon to Markley and Miller of a certain number of stock subscription contracts later pledged with Kirby-Smith as collateral security for the assignment. These contracts represented obligations by subscribers for stock to pay for the same in installments and by the company to issue full-paid stock when all installments were paid. The contracts in question were full paid. They were signed by officers of the company, as such contracts were customarily signed, and were, on McMahon's order, turned over to Markley and Miller and charged against their account under their plantation development contract. Later, the contracts were delivered by Markley and Miller to Kirby-Smith. But at the second trial there was really no more evidence than at the first showing what knowledge of or what participation in this transaction the company had.

On the two writs of error coming here, the plaintiff has had the advantage of the court being differently constituted on each writ. Yet the court as now composed, after a careful study of the present record in comparison with the former one, is forced, as before, to the conclusion that the evidence, had it been submitted, would not have sustained a verdict for the plaintiff.

This conclusion renders discussion of the remaining assignments of error unnecessary.

The judgment below is affirmed.