MUIR *v.* KALAMAZOO CORSET CO.[1]

1. CONTRACTS—SET-OFF—EVIDENCE—BURDEN OF PROOF—QUESTION FOR JURY.

   Where, in an action for commissions under a contract of employment, defendant pleaded items of set-off against plaintiff's account, the burden of proof was upon defendant as to such items; and, the testimony being in conflict, the verdict of the jury is controlling, in the absence of some positive rule of law to the contrary.

2. SAME — ACCORD AND SATISFACTION — CONSIDERATION — SUBSEQUENT MODIFICATION OF CONTRACT.

   In such action, it appeared that, by the terms of a written contract, plaintiff was to receive weekly stated sums in money, the remainder of the commissions earned to apply on an account owing to defendant. Plaintiff claimed that, owing to a change in the services he was rendering, the written contract was abrogated and an agreement made whereby the old account was canceled and the value and compensation for such services were to be determined on the completion of the work. *Held*, that the agreement for the cancellation of the old account, if made, was not without consideration, and the question of the modification or abrogation of the written contract was properly submitted to the jury.

3. PRINCIPAL AND AGENT — SCOPE OF EMPLOYMENT— ADDITIONAL DUTIES—COMPENSATION.

   The performance by an agent of services outside of the scope of his employment will not support a claim for additional compensation, in the absence of an agreement to that effect or some custom supporting such recovery.

4. SAME—MONEY OF PRINCIPAL—DUTY TO ACCOUNT—WHAT CONSTITUTES—WAIVER.

   An agent is bound to account to his principal for money of the latter coming into the hands of the agent for disbursement, such "account" under the law being a detailed statement; and a waiver of a weekly itemized statement is not a waiver of an accounting at some time.

---

[1] Rehearing denied May 25, 1909.

5. CONTRACTS — ACCOUNTING — EVIDENCE — INSTRUCTIONS — RE-
QUESTS TO CHARGE.

Where, in such action, there was testimony tending to prove
that, by agreement of the parties, plaintiff was relieved from
the duty of rendering an itemized account of moneys sent to
him for expenses, and that thereafter he settled with his
principal and acquitted himself in that behalf to the satisfac-
tion of the principal, it was not error to refuse requests to
charge directing a verdict for defendant because plaintiff had
failed to prove the amount actually expended.

6. APPEAL AND ERROR — SCOPE OF INQUIRY — MATTERS NOT CON-
SIDERED ON TRIAL—ASSIGNMENTS OF ERROR—NECESSITY.

The scope of inquiry in the Supreme Court is limited by the
suggestions made to the trial court and the errors assigned.

Error to Wayne; Donovan, J. Submitted January 14,
1909. (Docket No. 85.) Decided February 2, 1909.

Assumpsit by Erwin T. Muir against the Kalamazoo
Corset Company for commissions earned on a contract of
employment. There was judgment for plaintiff, and de-
fendant brings error. Affirmed.

*D. B. Hayes, W. G. Fitzpatrick*, and *Harry C.
Howard*, for appellant.

*May & Dingeman*, for appellee.

OSTRANDER, J. Plaintiff sued to recover commissions
claimed to be due to him under a contract reading:

"Memorandum of agreement, made this 30th day of
September, 1905, between the Kalamazoo Corset Company,
of Kalamazoo, Mich., of the first part, and E. T. Muir, of
Detroit, Mich., of the second part. The said Kalamazoo
Corset Co. agrees: (1) To employ the said E. T. Muir as
superintendent of all the retail departments owned by the
said Kalamazoo Corset Co., or that shall hereafter be ac-
quired during the life of this contract, it being understood
that said E. T. Muir is to have general supervision of
said departments. (2) To pay said E. T. Muir as compen-
sation for his services a commission of five per cent. on
the gross sales made by all of said retail departments now
owned by the said Kalamazoo Corset Co. or that may be

acquired during the life of this contract.   Said commissions are to be due and payable monthly as earned.   In consideration of the above the said E. T. Muir agrees: (1) To act as superintendent of the retail departments of the Kalamazoo Corset Co., and to devote his entire time to promoting the interests of said departments. (2) To visit said departments as often as directed by the said Kalamazoo Corset Co. (3) To pay all of his expenses incurred while acting as superintendent of the retail departments for said Kalamazoo Corset Co., it being understood that the commission named above is to cover salary and expenses.   This contract to be in full force and effect from November 1, 1905, to January 1, 1907."

Defendant pleaded the general issue with notice of set-off.   The jury returned a verdict for the plaintiff for $1,419.85, and judgment was entered on the verdict. Defendant was refused a new trial.

It appears that defendant had employed plaintiff as a traveling salesman for the period of one year from November 1, 1904.   The terms of the agreement are:

" (2) To pay the following commission on sales made by Mr. Muir.   Five per cent. on goods sold for $4.50 per dozen and less.   Ten per cent. on goods sold for $6.00 per dozen to $15.00 per dozen.   Twelve and one-half per cent. on goods sold for $15.00 per dozen and upwards.   (3) To guarantee to Mr. Muir a salary of $150.00 per month and his traveling expenses.   When his commissions amount to more than the above-named salary and traveling expenses then Mr. Muir is to pay his own expenses and work on a strictly commission basis.   (4) While Mr. Muir is on a salary to pay his actual and necessary traveling expenses incurred while on the road while promoting their interests, such as car fare, bus fare, hotel bills, etc. Said expenses to be allowed only when presented in proper form giving items, dates incurred, places, etc.   (5) To allow Mr. Muir to draw $25.00 per week to be applied on his salary and commission, it being understood that the balance of his commissions and salary are to be applied on the account mentioned below.   In consideration of the above the said E. T. Muir agrees:   (1) To act as traveling salesman for the said Kalamazoo Corset Co., and to devote his entire time to promoting their interests as directed by them.   (2) While working on a salary, to ren-

der an itemized weekly expense account at the end of each week, covering all money actually expended in behalf of said Kalamazoo Corset Co., showing the amount of hotel bills in each town, fare between towns, giving names and dates and such other information regarding each item as may be requested by said party of the first part. (3) To take good care of all property placed in his charge, such as samples, sample cases, reference books, etc., and to turn over such property in good condition to said Kalamazoo Corset Company or its representative whenever so requested by said Kalamazoo Corset Company. (4) He also authorizes the said Kalamazoo Corset Company to charge to his personal account the sum of $1,103.29, the amount standing on the books of said Kalamazoo Corset Company growing out of the old E. T. Muir & Co., and Her Ladyship Corset Co. matters, ard agrees to pay the balance of his commission and salary over and above the $25.00 per week mentioned above to apply on his account. It is mutually understood and agreed: (1) That the territory to be covered by the said E. T. Muir is to be arranged later. (2) That this contract may be canceled by either party by giving the other party a thirty days' notice with the understanding that such notice does not affect Mr. Muir's agreement to pay the $1,103.29 mentioned above."

The principal items of defendant's set-off, disputed by plaintiff, arise out of the relations and dealings of the parties during the period covered by the terms of this contract. The sales made did not produce a sum equal to the monthly guaranty and expenses. After February 1, 1905, plaintiff did not render an itemized expense account. He claimed that the requirement was waived by defendant. The state of plaintiff's account with defendant on November 1, 1905, when the second contract, the one in suit, took effect, was that plaintiff appeared to be owing defendant $2,102.27, the account including the charges to plaintiff of $1,103.29 for indebtedness which by the terms of the contract was to be charged to him, $997.11 for money advanced and not accounted for, and an item of $1.87 for merchandise. Stated in another way, it appeared that plaintiff had been paid during the

period covered by the first contract $2,970. He was credited with his salary of $1,800, with reported expenses $172.89, a total credit of $1,972.89. He had therefore received $997.11 for which he had not accounted, and no application in reduction of his indebtedness had been made.

Counsel agreed concerning the state of various accounts, and at the conclusion of the trial presented, respectively, for the use of the court and jury, computations showing the claims of the parties. These computations are:

| | | |
|---|---:|---:|
| Total commissions earned by Muir on last contract | $9,918 | 62 |
| Total commissions received | 8,294 | 25 |
| | $1,624 | 37 |
| Less the telephone charges | 138 | 05 |
| | $1,488 | 32 |
| Allowance made by Muir to settle old expenses | 150 | 00 |
| | $1,336 | 32 |
| Interest, 15 months 5 per cent | 83 | 53 |
| Total claim of plaintiff | $1,419 | 85 |
| The defendant claims he paid during the contract (first contract) | $2,970 | 00 |
| That the samples were not returned | 39 | 16 |
| | $3,009 | 16 |
| Salary and expenses | 1,972 | 89 |
| Balance | $1,036 | 27 |
| Old account | 1,103 | 29 |
| Balance due from plaintiff at the beginning of second contract | $2,139 | 56 |
| Balance commission due (on second contract) | 1,266 | 20 |
| And that makes a balance due to the defendant according to their figures | $873 | 36 |

It will be noted that in the computation made for the

plaintiff no charge against him growing out of the dealings of the parties under the first contract, or previous thereto, is allowed, except an item of $150, and that in the computation made for defendant plaintiff is credited with but $172.89 of money paid out by plaintiff for expenses under the first contract. Assuming the first contract to have been in force and controlling during the period it was in terms made to cover, neither computation is a correct one. It is evident, and in argument is admitted, that plaintiff paid out a larger sum than $172.89 for his expenses. It is quite as clear that plaintiff did not earn enough money, under the terms of the first contract, to pay himself $25 a week and also pay the old indebtedness. It is the claim of the plaintiff that after he entered upon the performance of the first contract his duties were changed from those of a traveling salesman to include duties and to require the performance of services and the paying out of money for expenses in securing and superintending for defendant departments in various stores, in various cities, which departments were controlled by defendant for the sale of corsets. There was testimony tending to prove that in May, 1905, he by letter resigned his position. There is no testimony tending to prove that he stopped work. He later talked with Mr. Hatfield, defendant's president, telling him he could not afford to work for $25 a week, and was told to go on, draw what money he wanted for traveling expenses, render the best service he could until the end of the year, and defendant would make him satisfied; that thereafter his work consisted almost entirely of looking after departments already purchased, and looking for and buying new departments. The testimony further tends to prove that in September, 1905 (the contract in suit was dated September 30, 1905, to take effect November 1, 1905), plaintiff was asked to make a proposition as the basis for a new arrangement, and replied that the old arrangement had not been closed. Defendant's president told him, in substance, that on November 1st he would have paid $600 of his indebtedness,

and as to the balance, "I will wipe that out." There was discussion and correspondence, renewed from time to time, concerning the expense account. Plaintiff's testimony tends to prove that upon an occasion as late as April, 1906, or later, he was told that, crediting his account $172.89 audited expenses, there appeared to be a balance standing against him of some $1,599.27; that it was agreed that plaintiff should be credited with all of this amount except $150. Mr. Hatfield testified that he and plaintiff were trying to arrange some settlement, fair to both parties, of the matter of the expense account, although he denied that any arrangement was made. Plaintiff testified, over objection, that he had paid out for expenses about $1,600, for which he rendered no itemized statement. The effect of plaintiff's testimony is this: The first written contract was not controlling of the rights or duties of the parties after May, 1905. The provision that plaintiff should draw but $25 weekly of his salary, the remainder to be applied in payment of his debt, was abrogated. The provision for a weekly itemized expense account had before that been waived. He had received $2,970, of which he should be credited $172.89, plus $1,599.27, less $150, making $1,622.16, leaving $1,347.84 as the sum received on account of salary. This left due him as salary, on the basis of $1,800 annually, $452.16, with an indebtedness of $1,103.29 to the company. The balance against him, therefore, on November 1, 1905, was $651.13. This amount was credited to him, for services rendered, and, upon his payment of the sum of $150, balanced his old account.

As to the matters of set-off, defendant had the burden of proof. There was sharp conflict of testimony concerning many of the facts it sought to establish. The finding of the jury was supported by testimony, and, unless some controlling rule of law forbids it, must stand. The contention that the testimony discloses no consideration for the alleged cancellation of the balance of plaintiff's indebtedness to defendant is without merit. It is not the

case of one forgiving a debt or accepting as full payment less than is agreed to be due and owing to him. According to plaintiff's theory, it is the case of payment of the full amount due and owing by services, the value of which, and the compensation for which, were left to be settled by agreement. It is a rule of law that where an agent is employed at a fixed salary or rate, and the principal imposes upon him, or he performs, additional duties, with enlarged powers, no extra compensation can be recovered, unless there is an agreement to such effect, or some custom supporting such recovery. See 1 Am. & Eng. Enc. Law (2d Ed.), p. 1116; *Schurr* v. *Savigny*, 85 Mich. 144. The jury has found there was an express agreement modifying, if not abrogating, the written contract.

It may be admitted that as to the expense account the defendant had sustained the burden of proof when it showed the amount of money paid to plaintiff. The duty of an agent to account to his principal for moneys of the principal coming into his hands is not disputed. Mechem on Agency, § 528; *Moyses* v. *Rosenbaum*, 98 Ill. App. 7; *Wolf Co.* v. *Salem*, 33 Ill. App. 614. And it may be said, also, that an account, in cases like the present one, is a detailed statement. 1 Bouvier Law Dict. p. 63. It is clear, too, that waiver of weekly itemized statements of expenses is not a waiver of an accounting at some time. Plaintiff's testimony goes much further than this. It is to the effect that he declined to render a detailed account of his expenses; that thereafter money was sent to him, as usual, with the understanding that he should not render such an account, and that in the end he acquitted himself to the satisfaction of his principal. In addition to this he testified, over objection, that he actually expended about $1,600 more than he had rendered itemized statements for. Error is assigned upon the ruling admitting this testimony and upon the refusal of the court to give certain requests to charge, neither of which requests took

into account the alleged acquittance, and both of which directed a verdict for defendant upon this contention, if it was found that plaintiff had failed to prove what his expenses actually were.   One of these requests, the seventh, was read to the jury by the court, the court, however, employing the word "can" where the word "must" was used by counsel, in the connection "the jury must disregard his claim."   When he had concluded the reading the court said: "I want to look at this request, because I have marked it doubtful.   I think I will reach it in another place."   Whether this remark referred to the instruction just given or to a succeeding request is not, with certainty, disclosed.   The subject was not again referred to in the charge, and the court immediately passed to and gave defendant's eleventh request.   The jury should not have been instructed as requested, and whether the instruction was or was not understood to be given is not important.

We do not agree with counsel for appellant when they say the positions taken by plaintiff with reference to his expense account were, *first*, that he had acquitted himself by agreement; and, *second*, that he had actually disbursed the total amount of unaccounted-for expense money.   His contention was that he had been acquitted by his principal.   He did not pretend to have kept an account, and in stating that he had paid out for expenses about $1,600 he was not rendering an account.   It will be assumed, from the fact that he was willing to deduct $150 from this amount, that he regarded some items as not properly chargeable to defendant.   Indeed he admits that he used $50 otherwise than in the business of his principal.   There may be ground for just complaint concerning the manner of submitting this matter to the jury, but the scope of inquiry in this court is limited by the suggestions made to the trial court and the errors assigned.   We have considered all of the errors assigned and argued, and are

of opinion that the case was one for the jury upon all disputed facts, and that no reversible error is made to appear.

Judgment is affirmed.

GRANT, MONTGOMERY, HOOKER, and MOORE, JJ., concurred.